UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSÉ A. ADAMES,

                    Plaintiff,

v.                                                Case No. 19-cv-857-pp

JOHN BIRDYSHAW, TONI MELI,
BRIAN FOSTER, MS. BONIS,
MR. IMMERFAL, MS. STAGEMAN,
MS. SMIT, MS. RADKE, and JOHN DOE,

                    Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      José A. Adames, who is confined at Waupun Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C.

1

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On June 10, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $1.27. Dkt. No. 4. The court received that fee on July 3, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."

2

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff alleges that between 9:30 and 10:00 p.m. on October 30, 2018, he pressed the emergency call button in his cell and told the second-shift sergeant that he was going to kill or harm himself. Dkt. No. 1 at 3. Around 9:35 or 9:40 p.m., defendant John Birdyshaw allegedly approached the plaintiff's cell and asked him what was going on. Id. The plaintiff states that he told Birdyshaw that he had already told the sergeant in the control bubble that he was going to kill himself and he needed to be placed in clinical observation. Id. According to the plaintiff, Birdyshaw told the plaintiff he wasn't being serious,

3

that all he needed to do was to lay down and that they would talk about it in the morning. Id.

Around 9:40 or 9:45 p.m., the plaintiff pressed his emergency call button for what he says was the "third" time. Id. The plaintiff asserts that the sergeant responded and asked him "what was [his] medical emergency need?" Id. The plaintiff states that he told the sergeant he cut his neck trying to kill himself and that he needed medical attention. Id. The plaintiff says that at 9:57 p.m., another inmate pushed that inmate's emergency medical button and told the second-shift sergeant that the plaintiff was bleeding because he tried to kill himself and that the plaintiff needed medical attention. Id. The plaintiff states that sergeant did not try to contact the other inmate or him despite them both pushing their call buttons multiple times. Id.

Between 10:00 and 10:15 p.m., the plaintiff again pressed his emergency call button. Id. The plaintiff reported to the third-shift workers (who had just started their shift) that he had tried to kill himself and that he needed medical attention because he'd cut his neck and was bleeding. Id. at 3-4. After a couple of minutes, officer Winter came to his cell to ask what was going on.[1] Id. at 4. The plaintiff explained that he had cut his neck during second shift, and that he needed medical attention because he'd tried to kill himself by cutting his neck. Id. Winter checked the cuts on the plaintiff's neck, then allegedly told the plaintiff that the plaintiff needed to do more than that if he really wanted to kill

---

[1] The plaintiff did not identify Winter as a defendant in the caption of his complaint, but it is clear from his allegations and requested relief (see dkt. no. 1 at 9) that he intended to sue him.

4

himself. Id. The plaintiff does not indicate whether he received medical treatment.

The plaintiff explains that since October 2018, he had been informing defendant Meli about a group of inmates who were (and still are) trying to extort money from him. Id. Those inmates allegedly told the plaintiff that if he did not pay by the deadline, they would harm him. Id. The plaintiff received these threats while in general population. Id. The plaintiff states that, as a result of these threats, he made the October 30, 2018 attempt to kill himself. Id.

The plaintiff states that, sometime in January or February, after he was released from the restricted housing unit back to general population, defendants Immerfal (the plaintiff also spells his name "Immerfall" throughout his complaint) and Captain John Doe interviewed him. Id. They asked him several questions about why he wanted to kill himself in October 2018. Id. The plaintiff told Immerfal about the group of inmates who were threatening him and demanding money and provided Immerfal with a threatening letter that one of the inmates had sent. Id.

The plaintiff says that about two weeks later he was assaulted in his cell by his cellmate. Id. The plaintiff states that he contacted Meli and Immerfal via an inmate request form and told them about the assault, but they allegedly did nothing. Id. The plaintiff states that he continued to be housed with the inmate who had assaulted him. Id. at 5.

5

The plaintiff states that, on February 3, 2019, he was placed in the restricted housing unit. Id. He asserts that numerous times, he tried to contact defendants Meli, Immerfal, Bonis and Smit to let them know that he was still being threatened. Id. at 4-5. He told them that he could not be sent back to general population because the guys who had demanded money from him had ordered inmates in general population to assault him for failing to pay by the deadline. Id. at 5. The plaintiff asked to be transferred to another institution. Id. The plaintiff says that despite his requests, these defendants decided to release him back into general population. Id.

A little more than a month later, on March 12, 2019, the plaintiff attended a PRC (Program Review Committee) hearing, held by a classification committee. Id. Defendants Stageman, Radke and Bonis were present. Id. The plaintiff told the committee that he needed to be transferred to another institution because of the inmates who were extorting him for $800 and threatening him. Id. The plaintiff asserts this committee was partly responsible for prisoner safety, but that the defendants decided to keep him in the same institution where he already didn't feel safe and was being extorted. Id.

The plaintiff says that two days later one of the inmates who had been threatening him physically assaulted him. Id. The plaintiff states that he was again placed in restricted housing. Id. The plaintiff asserts that over the next week or so, he contacted Foster, Meli, Bonis, Stageman and Radke to let them know that he had been assaulted by a member of the group who had been threatening him. Id. at 5-6.

On March 25, 2019, the plaintiff received a response from Bonis. Id. at 6. She told him that Captain Rymarkiewicz (who is not a defendant) had been assigned by Meli to investigate the plaintiff's claims. Id. The plaintiff states that he was never interviewed or contacted by anyone from security. Id. About four days later, the plaintiff contacted Rymarkiewicz and asked to be interviewed. Id. The plaintiff does not say whether Rymarkiewicz interviewed him.

On April 1, the plaintiff says, he "was able to file a SPN" on the person who had assaulted him; he does not explain what "SPN" stands for. Id. and On April 13, 2019, the plaintiff asked Meli to place him in protective confinement, but, according to the plaintiff, Meli decided to release him to general population. Id. The plaintiff asserts that the defendants told him that he should have filed an SPN "on this group of guys" with specific, verifiable information in it; they told him that the SPN had to include the offender's full name and not just his street name. Id. The plaintiff explains that he doesn't know the real names of all the inmates who are extorting and threatening him and his family. Id.

The plaintiff asks for compensatory and punitive damages. Id. at 9. He also asks for injunctive relief—a transfer to another institution. Id.

C.  Analysis

Under the controlling principle of Federal Rule of Civil Procedure 18(a), "[u]nrelated claims against different defendants belong in different suits," to prevent prisoners from dodging the fee payment or three strikes provisions in the PLRA. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). "A party

7

asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternate claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Under this rule, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." George, 507 F.3d at 607. Joinder of multiple defendants into one case is proper only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action" Fed. R. Civ. P. 20(a)(2).

The plaintiff has sued the John Doe sergeant (who was working in the security bubble at the time of the October suicide attempt), Birdyshaw and Winter because they allegedly failed to get him medical attention after he tried to kill himself by cutting his neck (and because Winter made an unprofessional comment to the plaintiff). He has sued Meli, Foster, Immerfal, Bonis, Smit, Stageman and Radke because they allegedly failed to protect him from inmates after he told them that those inmates had threatened him.

While the court acknowledges that the plaintiff says he tried to kill himself as a way of avoiding an assault by the other inmates, the evidence that will be necessary for the plaintiff to prove his claims against the first set of defendants will not overlap with the evidence that will be necessary for him to prove his claims against the second set of defendants. In other words, his "right to relief" regarding the two sets of defendants does not arise "out of the same

transaction, occurrence, or series of transactions or occurrences" nor are there "question[s] of law or fact common" to both sets of defendants. Fed. R. Civ. P. 20(a)(2). The plaintiff cannot pursue his claims against both sets of defendants in the same complaint. See George v. Smith, 507 F.3d at 607.

The court will give the plaintiff the opportunity to file an amended complaint that describes one of the two claims. He must choose whether—in this case—he wants to pursue his claims against the John Doe sergeant, Birdyshaw and Winter, or whether he wants to use this case to pursue his claims against Meli, Foster, Immerfal, Bonis, Smit, Stageman and Radke. The plaintiff may then file a separate complaint describing whichever claim he chooses not to pursue in this case.

An amended complaint takes the place of a prior complaint, so the plaintiff must include in the amended complaint all the facts and arguments he wants the court to consider. See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1056 (7th Cir. 1998). If the plaintiff files an amended complaint, it will become the operative complaint in this case.

The court is enclosing two copies of its complaint form and instructions. The plaintiff can use one of the forms to file his amended complaint in this case. The plaintiff must write the word "Amended" at the top of the first page of the form, before the word "Complaint." He must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring,

and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper. The amended complaint takes the place of the prior complaint and must be complete in itself, so the plaintiff must repeat in the amended complaint any of the facts from the original complaint that are necessary to his claims.

The plaintiff may use the second form, if chooses to do so, to file a separate lawsuit bringing whichever claim he does not pursue in this case. For the second complaint form, the plaintiff does *not* have to mark it as amended or include the case number for this case; he will be filing a new case. But he should include all the defendants and all the facts that support his claim in the complaint. The plaintiff should also be aware that he will have to pay the filing fee for the second complaint.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint violates Federal Rules of Civil Procedure 18 and 20.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by the end of the day on **September 11, 2020**. If the plaintiff files an amended complaint by the deadline, the court will screen it as required by 28 U.S.C.

§1915A. If the plaintiff does not file an amended complaint by the end of the day on September 11, 2020, the court will dismiss this case based on the plaintiff's failure to follow the court's order and based on his failure to diligently pursue his case. See Civil L.R. 41(c).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$348.73** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[2] Plaintiffs

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>  Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin
>  362 United States Courthouse
>  517 E. Wisconsin Avenue
>  Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and two blank prisoner complaint forms.

Dated in Milwaukee, Wisconsin, this 29th day of July, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**