JOSE A. ADAMES,

                    Plaintiff,

v.                                                     Case No. 19-cv-857-pp

JOHN BIRDYSHAW, *et al.*,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (DKT. NO. 9) AND SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

      Jose Adames, an inmate at Waupun Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983. On July 29, 2020, the court screened the plaintiff's complaint and concluded that it violated Federal Rules of Civil Procedure 18 and 20 because it contained unrelated claims against different sets of defendants. Dkt. No. 8 at 7-9. The court gave the plaintiff an opportunity to file an amended complaint. Id. at 9.

      On August 31, 2020, the plaintiff filed a motion for leave to file an amended complaint. Dkt. No. 9. It was not necessary for the plaintiff to file a motion, because the court already had granted him leave to file an amended complaint in its screening order. Nonetheless, the court will grant the motion.

      The plaintiff attached two documents to the motion for leave to amend. The first is captioned "Ame[n]d Complaint"; the second is captioned "Complaint under the Civil Rights Act 42 [] U.S.C. 1983." Dkt. Nos. 9-1, 9-2. For the most part, they contain the same allegations, but the second document includes

1

more information and details than the first, so the court will use the second attachment, dkt. no. 9-2, as the operative complaint. The court will screen the amended complaint as required by 28 U.S.C. §1915A(a).

**I.     Screening the Amended Complaint**

  A. Federal Screening Standard

As the court explained in its order screening the plaintiff's original complaint, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). To state a claim under the federal notice pleading standard, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a claim under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)).

The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015).

B.     The Plaintiff's Allegations

The amended complaint names three defendants: a John Doe sergeant, Officer John Birdyshaw and Officer Winter.[1] The plaintiff alleges that between 9:30 and 10:00 p.m. on October 30, 2019, he pressed the emergency call button in his cell in the restricted housing unit and informed the second-shift sergeant working in the control bubble that he was going to "kill/harm" himself. Dkt. No. 9-2 at 2. The plaintiff asserts that the sergeant "never took appropriate actions in dealing with a self-harm/suicidal inmate when the inmate reports to the Sgt. or any other officer of these kinds of intentions." Id.

The plaintiff states that around 9:30-9:45 that evening, defendant Birdyshaw approached his cell and asked him what was going on. Id. The plaintiff allegedly told Birdyshaw that he was going to kill himself and needed to be placed in clinical observation. Id. The plaintiff says Birdyshaw told him he wasn't being serious and "all [the plaintiff] need to do was to lay down and we [Birdyshaw and the plaintiff] will talk about it in the morning." Id.

The plaintiff asserts that around 9:40 or 9:45 p.m., he pressed his emergency call button for the third time. Id. The plaintiff states that was when he was finally able to make contact with the sergeant, who asked him what his medical emergency need was. Id. The plaintiff told the sergeant that he had cut his neck trying to kill himself and that he needed medical attention. Id. at 3. The plaintiff states that Birdyshaw arrived at his cell minutes later and asked

---

[1] The plaintiff also spells this officer's name "Winters" in the section of the complaint where he identifies the defendants, dkt. no. 9-2 at 1, but he spells it "Winter" in his allegations, so the court will use that spelling.

3

Case 2:19-cv-00857-PP-SCD   Filed 10/29/20   Page 3 of 8   Document 11

him what was going on. Id. The plaintiff told Birdyshaw what he had told the sergeant. Id. According to the plaintiff, Birdyshaw told him he wasn't being serious, that all he needed to do was to lay down and they'd talk about it in the morning. Id.

The plaintiff alleges that at 9:57 p.m., after Birdyshaw had left the plaintiff's cell, another inmate pressed his medical emergency button and told the sergeant in the control bubble that the plaintiff was bleeding because he had tried to kill/harm himself, and he needed medical attention. Id. The plaintiff states that the sergeant didn't communicate with the other inmate or him to inquire whether the plaintiff was ok. Id. The other inmate pressed his call button for a third time to try to talk to the sergeant. Id.

The plaintiff states that between 10:00 and 10:05 p.m., he again pressed his emergency call button to get some medical attention. Id. The plaintiff states that a couple of minutes passed and then defendant Winter approached the plaintiff's cell and asked what was going on. Id. The plaintiff told him he needed medical attention because he had tried to kill himself by cutting his neck. Id. The plaintiff asserts that Winter verified that the plaintiff had cut his neck, then told the plaintiff that he'd have to do more than that if he was really serious about killing himself. Id. Winter allegedly notified the third-shift sergeant over the radio, after which the plaintiff was handcuffed and taken to a strip cell. Id.

Someone notified Lieutenant Nelson (who is not a defendant) of the plaintiff's suicide attempt; Nelson allegedly went to the strip cell and asked the

4

plaintiff if he just wanted to go back to his cell. Id. The plaintiff states that Nelson would have sent him back to his cell but for the fact that the plaintiff started screaming, kicking and banging on the door and telling Nelson numerous times to send him to an observation cell because he still had suicidal ideations. Id. The plaintiff states that before he was placed in the observation cell, an unidentified nurse (who is not a defendant) checked his cuts and cleaned the blood. Id.

The plaintiff seeks declaratory relief and money damages, including compensatory and punitive damages. Id. at 4. He also asks for an injunction ordering that he be transferred to another institution. Id.

C.  Analysis

The Eighth Amendment prohibits "cruel and unusual punishments" and "imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care." Phillips v. Diedrick, No. 18-C-56, 2019 WL 318403 at *2 (E.D. Wis. Jan. 24, 2019) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). To state a violation of the Eighth Amendment, a plaintiff must show that the defendants "knowingly and unreasonably failed to respond to an objectively serious risk of harm." Conner v. Rubin-Asch, 793 F. App'x 427, 430 (7th Cir. 2019) (citing Farmer, 511 U.S. at 844-845; Wilson v. Adams, 901 F.3d 816, 820 (7th Cir. 2018)).

"When the serious risk at issue is attempted suicide, a defendant acts knowingly and unreasonably if that defendant '(1) subjectively knew the prisoner was at risk of committing suicide and (2) intentionally disregarded

5

that risk.'" Conner, 793 F. App'x at 430 (quoting Lisle v. Welborn, 933 F.3d 705, 716-17 (7th Cir. 2019)). "This requires 'more than mere or gross negligence, but less than purposeful infliction of harm.'" Id. (quoting Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003)).

The court will allow the plaintiff to proceed against Birdyshaw on a claim of deliberate indifference based on his allegations that Birdyshaw downplayed his threats of suicide and his injuries and told him they would deal with it in the morning despite the plaintiff saying he was feeling suicidal and wanted to be put on observation. The plaintiff alleges that after Birdyshaw walked away the first time, the plaintiff cut his neck, an injury that required medical attention.

The court will not allow the plaintiff to proceed on a claim of deliberate indifference against Winter. The plaintiff alleges that Winter made a comment that was callous and cruel, but "most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." Beal v. Foster, 803 F.3d 356, 358 (7th Cir. 2015) (collecting cases). Despite what Winter said, the plaintiff asserts that Winter radioed the sergeant about the plaintiff's injuries, setting in motion his transfer to the strip cage and then to an observation cell, which is what the plaintiff had requested. Despite Winter's words, his actions did not demonstrate deliberate indifference to the risk of harm the plaintiff posed to himself.

Nor will the court allow the plaintiff to proceed on a claim of deliberate indifference against the sergeant in the control bubble. The plaintiff contends

6

that the sergeant took no steps to ensure his safety, but his factual allegations undermine that conclusion. The plaintiff explains that after he pressed his emergency call button, Birdyshaw twice approached his cell within a few minutes to inquire what was going on. And, after he pressed his emergency call button to report his injuries, Winter approached the cell within a couple of minutes. The only reasonable inference is that Birdyshaw and Winter went to the plaintiff's cell each time because the sergeant had notified them that there was an issue. The fact that the sergeant did not ask questions or further communicate with the plaintiff over the intercom is not enough for the court to infer that he was deliberately indifferent to the plaintiff's condition.

## II. Conclusion

The court **GRANTS** the plaintiff's motion for leave to file an amended complaint. Dkt. No. 9.

The court **DIRECTS** the clerk's office to docket the amended complaint at dkt. no. 9-2 as the operative complaint.

The court **DISMISSES** Officer Winter and Sgt. John Doe as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the amended complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendant John Birdyshaw. The court **ORDERS** the defendant to file a responsive pleading to the amended complaint within 60 days.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Stephen C. Dries for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated in Milwaukee, Wisconsin, this 29th day of October, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

8

Case 2:19-cv-00857-PP-SCD   Filed 10/29/20   Page 8 of 8   Document 11